## IN THE UNITED STATES DISTRICT COURT
## FOR THE SOUTHERN DISTRICT OF ALABAMA
## SOUTHERN DIVISION

| | | |
|---|---|---|
| JORDANN THOMAS, | ) | |
| | ) | |
| Plaintiff, | ) | Civil Action No.: |
| | ) | |
| v. | ) | 1:21-cv-00234 |
| | ) | |
| GULF BEACH HOTEL, INC. | ) | JURY DEMAND |
| *d/b/a* PERDIDO BEACH RESORT, | ) | |
| SAMUEL DAVID RIVERA, and | ) | |
| SCOTT JEFFREY DAVIS | ) | |
| | ) | |
| Defendants. | ) | |

## COMPLAINT

## I.   INTRODUCTION

1.  This is an action for equitable and legal relief to redress unlawful discrimination based on
    sex, including sexual harassment, disability, including disability harassment, and retaliation,
    including retaliatory harassment, against the plaintiff. The suit is brought pursuant to Title
    VII of the Civil Rights Act of 1964, as amended by the Civil Rights Act of 1991, 42 U.S.C.
    §§2000e *et seq.* (hereinafter "Title VII"), which provides for relief against discrimination in
    employment, including illegal harassment, and the Americans with Disabilities Act, 42
    U.S.C. §12101, *et seq.* (hereinafter "ADA"), which provides for relief against discrimination
    in employment, including illegal harassment, on the basis of disability. Through
    supplemental jurisdiction, this Court's jurisdiction extends over the related state law claims
    of invasion of privacy, assault and battery, intentional infliction of emotional distress, and
    negligent and/or wanton, training, supervision, and/or retention because all such claims arise

from a "common nucleus of operative fact." The plaintiff seeks a declaratory relief, injunctive relief, and other equitable remedies, including backpay and reinstatement, as well as compensatory and punitive damages, costs, attorneys' fees and expenses.

## II.    JURISDICTION & VENUE

2.    The jurisdiction of this Court is invoked pursuant to 28 U.S.C. §§1331, 1343(a)(4), 2201, 2202, and 42 U.S.C. §2000e-5(f)(3). This Court has supplemental jurisdiction over the plaintiff's state law claims pursuant to 28 U.S.C. §1367 because all such claims are so related to claims in the action that they form part of the same case or controversy.

3.    The unlawful employment practices alleged were committed by the defendants within Baldwin County, Alabama, which is within the jurisdiction of the Southern Division of the United States District Court for the Southern District of Alabama. Venue is proper in this Court pursuant to 28 U.S.C. §1391(b) and 42 U.S.C. §2000e-5(g).

4.    The plaintiff requests a jury trial on all equitable claims and defenses and all issues triable by jury.

## III.    ADMINISTRATIVE PREREQUISITES

5.    The plaintiff has fulfilled all conditions precedent to the institution of this action under Title VII. The plaintiff filed a charge of discrimination with the Equal Employment Opportunity Commission ("EEOC") within 180 days of the occurrence of the last discriminatory act. The plaintiff timely filed her lawsuit within 90 days of the receipt of her Notice of Right-To-Sue from the EEOC.

6.    On or about April 21, 2020, the plaintiff timely filed a charge of discrimination under Title VII with the Equal Employment Opportunity Commission ("EEOC") against Perdido Beach Resort, which was assigned Charge Number 420-2020-01901 alleging, *inter alia*, an illegal

hostile work environment and/or harassment and changes to her job assignments and duties and other terms, conditions, and privileges of employment because of her sex, disability, and in retaliation for resisting and opposing this discrimination and complaining about the same. (Exhibit 1, Charge of Discrimination).

7.    The EEOC issued the plaintiff Notice of Right to Sue, which is dated March 19, 2021, which the plaintiff received several days later, and has timely filed this Complaint within 90 days of receipt of that notice. (Exhibit 2, Notice of Right to Sue).

8.    The plaintiff's state law claims for invasion of privacy, assault and battery, intentional infliction of emotional distress, and negligent and/or wanton, training, supervision, and/or retention against defendants Perdido, Rivera, and Davis do not require administrative exhaustion.

## IV.  **PARTIES**

9.    The plaintiff Jordann Thomas (hereinafter referred to as "plaintiff" or "Thomas") is a female citizen of the United States, is over the age of nineteen (19) and a resident of the State of Alabama during the relevant time period. The plaintiff was employed by defendant Gulf Beach Hotel, Inc., doing business as Perdido Beach Resort.

10.   The defendant Gulf Beach Hotel, Inc. doing business as Perdido Beach Resort (hereinafter referred to as "defendant", "Perdido" or "PBR") is an employer subject to suit under Title VII. The defendant Perdido has more than fifteen (15) employees and conducts business in Baldwin, County, Alabama. The defendant Perdido was the plaintiff's employer at all times relevant to this action within the meaning of Title VII of the Civil Rights Act of 1964. This Court's jurisdiction extends over the related state law claims of invasion of privacy, assault and battery, outrage and negligent and/or wanton, training, supervision, and/or retention

because all such claims are so related to claims in the action that they form part of the same case or controversy.

11.    The defendant Samuel (Sami) David Rivera (hereinafter referred to as "Rivera" or "defendant") is an individual subject to suit under Alabama law.

12.    The defendant Scott Jeffrey Davis (hereinafter referred to as "Davis" or "defendant") is an individual subject to suit under Alabama law.

## IV.    <u>STATEMENT OF FACTS</u>

13.    The plaintiff re-alleges all of the allegations in the complaint and incorporates the same by reference herein.

14.    Defendant Perdido hired Ms. Thomas during November 2017, and she began work on or about January 18, 2018. Scott Davis (male), Perdido's Head Baker, was Ms. Thomas' lead or manager, Lennon Harrison (male), Perdido's Pastry Chef, was her first-level supervisor, and Brody Olive (male), Perdido's Executive Chef, was her second-level supervisor.

15.    When Perdido hired Ms. Thomas for a baker position. Scott Davis (male), the head baker, trained Ms. Thomas to do her job. Lennon Harrison (male), the Pastry Chef, was her direct supervisor.

16.    During training, Ms. Thomas disclosed to Davis, Harrison, and Olive that she has a chromosomal disorder called 22-Q-11 Deletion Syndrome, which is a partial disability, and which means she processes information differently and suffers from anxiety and panic attacks. Ms. Thomas explained her disability to Davis, Harrison and Olive, who were her managers and supervisors, because, at the time, she did not drive herself to work due to her anxiety and would need to rely upon her mother to pick her up and drop her off.

17.    Ms. Thomas did not ask for any accommodations at this time because her disability did not

interfere with her ability to do her job.

18.   Within the first few months Ms. Thomas worked for Perdido, she was subjected to a hostile

work environment based on sex and/or disability. Davis, Ms. Thomas and Skylee Ennis

(female), another baker in the department, would exchange text messages about Lennon

Harrison (male) and how he treated female employees. Ennis (female) told Ms. Thomas that

she had complained to Executive Chef Brody Olive (male) about Harrison and how he

treated the female employees.

19.   Ms. Thomas understood that Ennis complained that Harrison was bullying her. Ms. Thomas

knew Davis was aware that Ennis complained because of a group text message and had

reported these concerns to Olive. Ennis told Ms. Thomas that, after she complained, Olive

ignored her complaints and told her to "leave this stuff at the door."

20.   After Ennis complained, Olive held a team meeting in which he failed to address Ennis's

complaints, ignored Harrison's actions, and insisted all of them work together as a team.

During that meeting, Ms. Thomas and Ennis requested additional training, which Olive

declined to provide. During November 2018, Ennis resigned, which left Ms. Thomas as the

only female employee in the bakery department. Ennis told Ms. Thomas that the reason she

was leaving was Harrison was "messing with her head" and she could not tolerate the

anxiety any longer.

21.   During February 2019, Ms. Thomas noticed that the crude and sexual environment in the

kitchen began to be directed towards her. Davis (male) and Samuel (Sami) Rivera (male), a

Sous Chef and first assistant to the Executive Chef, made comments about her breasts or her

rear end. Rivera continued to touch Ms. Thomas in this fashion throughout 2019, and both

Rivera and Davis would snap Ms. Thomas' body parts with a rolled-up towel, which

sometimes left raised welts or bruises. Davis made comments about how much it would hurt if they snapped her nipples with the towel. Davis would often come up behind her and snap her bra strap. These incidents and similar incidents happened over the course of the remainder of the year. Ms. Thomas often ended up in tears and felt like she was going to faint.

22.     Ms. Thomas did her best to "go along to get along." Ms. Thomas did not complain to Olive since Ennis had already complained that Harrison was bullying her, and saw that Olive failed to take any action whatsoever about her complaints.

23.     During August 2019, Rivera (male) corned Ms. Thomas in his office and grabbed her crotch. While Rivera had Ms. Thomas cornered, she asked her "are you a scaredy cat?" Ms. Thomas slipped out and left the room. Later, Rivera texted Ms. Thomas several more times with comments about being a "scaredy cat." Several times over the next few months, Rivera smacked Ms. Thomas' bottom when she walked by him and continued to send Ms. Thomas sexual text messages.

24.     After this incident, Ms. Thomas made an appointment with a mental health professional in Pensacola, Florida. During that appointment, she discussed some of the events at work with this mental health professional. Ms. Thomas scheduled a second appointment but, when it was time to go to the appointment, she became so anxious that she was unable to go back.

25.     During November 2019, Ms. Thomas requested time off to spend with her mother and sister. Ms. Thomas had requested the time off well in advance and, as the date approached, reminded Harrison that week that her family was driving eight (8) hours to spend time with her at Thanksgiving. Ms. Thomas' family was coming to the Thanksgiving banquet buffet. That day, Ms. Thomas reported to work at 4:00 a.m. and was expecting to leave so she could

have Thanksgiving with her family at their 1:30 p.m. reservation. Instead, Harrison sent Davis home and made Ms. Thomas work even though she had reminded him. Davis looked at Thomas and said: "when is your dinner?" Ms. Thomas said "my mother has a reservation for 1:30 p.m." Harrison gave Ms. Thomas a strange look with his eyebrow raised and said "Really? Are you sure about that? Because I think you're still going to be working during that time." Davis mentioned he had told Ms. Thomas she could leave, but Harrison said Davis didn't get to decide and refused to let her leave. Harrison kept telling Davis to leave even though Davis had come in later. Harrison refused to let Ms. Thomas leave instead. Harrison said "Brody [Olive] told me not to let her leave, and that Brody [Olive] will not let her go. Brody [Olive] told me that I can't keep letting her push me around." Harrison kept telling Davis to leave and he finally did. Harrison kept Ms. Thomas at work until the banquet hall closed even though there was virtually no work to do.

26.    Either that afternoon or the following afternoon, at the end of a shift, Harrison called Ms. Thomas into the office to talk and gave her an evaluation form. The performance evaluation relied upon Rivera's input. Rivera was angry that Ms. Thomas had rejected his sexual advances and gave claimed Ms. Thomas was not cooperative.

27.    During December 2019, Rivera's wife confronted Ms. Thomas about the text messages and asked her if there was something going on between her and Rivera. Ms. Thomas told her absolutely not and that she was trying to avoid him. Eventually, Rivera's wife agreed that he was a pig and said it was not right for him to be "harassing" her in that way. Rivera's wife admitted she had caught him spanking other women like he did her and apologized for his behavior. Ms. Thomas learned later that Rivera's wife had already complained to Harrison and shown him the text messages. However, Harrison never asked Ms. Thomas about the

text messages or whether they bothered her. Harrison later admitted that he gave Ms. Thomas a lower performance appraisal based on Rivera's input, which came after she had refused his sexual advances. A few days after this incident, Olive named Rivera Employee of the Year.

28.  During December 2019, Davis began making sexual advances toward Ms. Thomas. When Ennis was employed by Perdido, Davis, Ennis, and Ms. Thomas had gone to dinner and/or movies as friends. After Ennis resigned, Davis and Ms. Thomas continued this practice. During December 2019, the tone of these outings changed. One day, Davis insisted that Ms. Thomas go with him for drinks. Ms. Thomas did not want to go, but Davis insisted and so she went. Ms. Thomas thought his behavior was bizarre. Ms. Thomas refused to drink any of the drinks he bought her because she felt something was not quite right. Davis insisted they go to two different bars and kept telling Ms. Thomas she should drink "to relax." Ms. Thomas asked Davis to take her home which seemed to make him confused. Davis eventually relented and took Ms. Thomas home.

29.  Afterwards, Davis continued to tell Ms. Thomas she was beautiful and invited her to go dinner and the movies. After Davis had tried to get her to drink to relax, Ms. Thomas no longer socialized with Davis outside of work.

30.  On December 27, 2019, Davis told Ms. Thomas that he had a crush on her and wanted to date her. Ms. Thomas had no romantic interest in Davis but, because of her extreme social naivete, had no idea what to do.

31.  On December 30, 2019, Davis told Ms. Thomas that he regretted how he had behaved towards her and that he had told Harrison about Rivera's behavior towards her.

32.  On December 31, 2019, Davis said he wanted to start with a clean slate and pulled Ms.

Thomas towards him and kissed her on top of her head. Ms. Thomas did not know what to do.

33.    Afterwards, Davis seemed annoyed that Ms. Thomas had ignored his statement about having a crush on her and became sarcastic. Davis continued to talk to Ms. Thomas about how he had a crush on her and sent her inappropriate text messages.

34.    On January 4, 2020, Ms. Thomas received a long and disturbing text message from Davis and talked to her mother about what to do. Ms. Thomas' mother suggested she call Harrison, who agreed to meet with her later that day. At the meeting, Ms. Thomas explained that Davis was stalking and harassing her and showed him the text messages. Ms. Thomas expressed concern about Davis' mental state. Harrison said he needed to get Olive involved and that he did not want to lose either Davis or Ms. Thomas. Harrison stated it was clear Davis and Ms. Thomas could no longer work together and promised Ms. Thomas that she could have the Head Baker position in the café when it opened, which was supposed to be during April 2020. Ms. Thomas told Harrison that Davis could be very passive aggressive and had anger problems. Ms. Thomas stated that she was afraid of him.

35.    On January 5, 2020, at about 6:15 a.m., Davis began texting Ms. Thomas and continued to do so. Some of the texts were long and others were short, but they kept coming and lasted all day. Among the texts, Davis threatened to kill himself five times. Ms. Thomas reported this behavior to Harrison, who asked Ms. Thomas to send him the suicide threats, and she did. Toward the end of the day, Harrison told Ms. Thomas that the Human Resources Director wanted to meet with her the next day.

36.    On January 6, 2020, Ms. Thomas met with Human Resources Director Penny Groux (female) at 9:00 a.m. Ms. Thomas wanted to have her mother included in the meeting but

was told her mother could not come to the meeting. Olive and Harrison attended the meeting. During the meeting, Ms. Thomas tried to explain what had been happening with Rivera and Davis but became very anxious and upset and was sobbing and crying. Groux told Ms. Thomas not to come to work the next day and assured her that she would not have to work with Davis again. Ms. Thomas asked to keep her regular shift since she is a very anxious driver and does best on the early shift when there is no traffic on the way to work.

37.    On January 7, 2020, Ms. Thomas spoke to Groux, who told her that Davis and Rivera were going to give statements later that day. A day or so later, Rivera came to Ms. Thomas and apologized for how he had acted. Ms. Thomas never received any response from Groux or anyone at Perdido about her complaint about Rivera.

38.    On January 9, 2020, Harrison asked Ms. Thomas to change shifts and work the afternoon and evening shift (1:00 p.m. to 9:00 p.m.). Harrison told Ms. Thomas that Davis brought a note from his doctor which claimed he needed to stay on day shift. Harrison claimed the afternoon shift was more laid back and promised to teach Ms. Thomas new baking techniques. Harrison also again mentioned the Head Baker position in the café, which was scheduled to open in April 2020.

39.    On January 10, 2020, Ms. Thomas talked to Harrison about changing shifts. Ms. Thomas had a list of concerns, which included, but was not limited to, her physical safety around Davis. Ms. Thomas also mentioned that she had been bumped from the mandatory requisition training so Davis could go. Ms. Thomas also mentioned that she was concerned her hours would be reduced.

40.    Harrison assured Ms. Thomas she could get a security escort to her car but would need to specifically request one each time. Harrison told Ms. Thomas that she would receive training

from Olive rather than in the conference room with everyone else. Harrison also stated he would not cut Ms. Thomas' hours.

41.    During that meeting, Ms. Thomas asked to take vacation time on a specific weekend in February so she could attend PlayList Live, a YouTube convention in Orlando, Florida. Ms. Thomas had gone each year before and had never had a problem getting time off from work on that weekend, which was not a particularly busy time for Perdido. Harrison assured Ms. Thomas that it would be no problem for her to take those days off and approved her request. Harrison told Ms. Thomas that he planned to take vacation the same weekend, but that Davis would be able to cover for both of them.

42.    Afterward Ms. Thomas complained, Harrison scheduled Ms. Thomas for a mixed schedule with three (3) afternoon-evening shifts and two (2) morning shifts. This mixed schedule was extremely disruptive to her sleep and increased her anxiety. In contrast, Harrison continued to schedule Davis for five (5) morning shifts each week, and only had Ms. Thomas work two mornings when Davis was not scheduled to work.

43.    The split shift arrangement Harrison imposed almost immediately after Ms. Thomas complained effectively reduced Ms. Thomas' hours and increased Davis' hours. Harrison effectively reduced Ms. Thomas' hours because there was very little baking work that needed to be done on the afternoon-evening shifts. As a result, Ms. Thomas would be sent home before the end of shift on many shifts. Conversely, Harrison increased Davis' hours by allowing him to work overtime at the end of most of his shifts.

44.    Ms. Thomas had never received negative criticism or written discipline before she complained. After she complained, Harrison began to criticize her performance on almost every shift and gave Ms. Thomas a written disciplinary warning.

45.   Harrison made Davis responsible for preparing Ms. Thomas' task list each shift while Harrison was off work. Some days Davis would leave Ms. Thomas with nothing to do and some days he would give Ms. Thomas so much to do it was impossible to finish. Davis also began to assign Ms. Thomas unpleasant tasks which had never been her job before she complained. Some of these tasks were extremely unpleasant, such as cleaning dirty trays.

46.   Davis also began to leave daily written messages on the refrigerator which were thinly veiled messages to Ms. Thomas. Ms. Thomas complained about these messages to Harrison who allowed them to continue for weeks.

47.   On February 12, 2020, Ms. Thomas also complained to Harrison that her hours had been reduced. Harrison would schedule Davis and Ms. Thomas for eight (8) hour shifts but have Davis work overtime and then send Thomas home early. After Ms. Thomas complained, Harrison did not correct this disparity, but instead further increased Davis's hours worked and further decreased Ms. Thomas' hours worked.

48.   Soon after, Harrison told Ms. Thomas she could not take her previously approved vacation time in February. Harrison denied Ms. Thomas advance request for four (4) hours of sick leave. Ms. Thomas was scheduled to have lab work done for diagnostics per her doctor's orders. Harrison told Ms. Thomas to reschedule and go the following week on her day off. Harrison even questioned whether Ms. Thomas had a physical condition for which she was seeking diagnosis, challenging her about her symptoms. A day or two later, on February 14, 2020, Ms. Thomas received her first written disciplinary action.

49.   All of the above caused Ms. Thomas' anxiety to increase to the point where she had no choice but to resign. The fact that Harrison lied to Ms. Thomas about her vacation removed all doubt that he was retaliating against her because of her complaints and so she decided she

–12–

could not continue to work in that environment because of the extreme anxiety it caused her.

## V.   **DAMAGES**

50.     The plaintiff is now suffering and will continue to suffer irreparable injury from the defendants' unlawful conduct as set forth herein unless enjoined by this Court.

51.     The plaintiff has suffered embarrassment, humiliation, shame, damage to reputation, mental distress, emotional and physical pain and anguish and lost wages and other pecuniary losses as a consequence of the defendants' unlawful conduct.

52.     The plaintiff has no plain, adequate or complete remedy at law to redress the wrongs alleged herein and this suit for backpay, declaratory judgment, injunctive relief, and compensatory, punitive and liquidated damages is her only means of securing adequate relief.

## COUNT I: DISCRIMINATION (HARASSMENT) ON THE BASIS OF SEX IN VIOLATION OF TITLE VII

53.     The plaintiff re-alleges all of the allegations in the complaint and incorporates the same by reference herein.

54.     The defendant Perdido also intentionally discriminated against the plaintiff on the basis of her sex with regard to job assignments, discipline, and other terms and conditions of employment.

55.     The actions of the defendant Perdido, through its agents, Rivera, Davis, and other employees and managers, created a hostile work environment for the plaintiff which was based on sex and was continuous in nature during her employment. The hostile work environment was a continuing violation of Title VII.

56.     The defendant Perdido had actual and constructive knowledge of the sexual harassment because the harassment was open and obvious and because managerial employees

participated in the harassment, but the defendant Perdido failed to take prompt action to correct or eliminate the harassment.

57.    The defendant Perdido had actual and constructive knowledge of the sexual harassment because a number of individuals, including Ennis and Ramirez's wife, complained to managerial employees, but the defendant Perdido failed to take prompt action to correct or eliminate the harassment.

58.    The defendant Perdido engaged in the practices complained of herein with malice and/or reckless indifference to the plaintiff's federally protected rights.

59.    As a result and consequence of the defendant's actions, the plaintiff has suffered pain, financial damage, embarrassment, trauma and humiliation.

60.    This claim is brought against the defendant Perdido as the plaintiff's employer under Title VII and not against individual defendants Rivera and Davis.

### COUNT II: DISCRIMINATION
### (CONSTRUCTIVE DISCHARGE) ON THE BASIS OF SEX
### IN VIOLATION OF TITLE VII

61.    The plaintiff re-alleges all of the allegations in the complaint and incorporates the same by reference herein.

62.    The defendant Perdido intentionally discriminated against the plaintiff on the basis of her sex with regard to job assignments, discipline, and other terms and conditions of employment, by reducing her responsibilities and limiting her opportunities for advancement, including initiated a process which resulted in her constructive discharge in violation of Title VII.

63.    The defendant Perdido engaged in the practices complained of herein with malice and/or reckless indifference to the plaintiff's federally protected rights.

64.    As a result and consequence of the defendant's actions, the plaintiff has suffered pain,

financial damage, embarrassment, trauma and humiliation.

65. The defendant Perdido engaged in the practices complained of herein with malice and/or reckless indifference to the plaintiff's federally protected rights.

66. As a result and consequence of the defendant's actions, the plaintiff has suffered pain, financial damage, embarrassment, trauma and humiliation.

67. This claim is brought against the defendant Perdido as the plaintiff's employer under Title VII and not against individual defendants Rivera and Davis.

## COUNT III: DISCRIMINATION (HARASSMENT) ON THE BASIS OF DISABILITY IN VIOLATION OF THE ADA

68. The plaintiff re-alleges all of the allegations in the Complaint and incorporates the same by reference herein.

69. The plaintiff is a person with a disability, has a history of disability, and/or is regarded as disabled because she has a physical or mental condition that substantially limits a major life activity. *See* 42 U.S.C. § 12102.

70. The defendant is an employer in accordance with 42 U.S.C. §12111(5).

71. The plaintiff is a qualified individual with a disability as defined under the ADA. Furthermore, the defendant perceived the plaintiff as disabled and had a record of the plaintiff's disability.

72. The actions of the defendant Perdido, through its agents Rivera and Davis, created a hostile work environment for the plaintiff which was based on disability and was continuous in nature during her employment. The hostile work environment was a continuing violation of the ADA.

73. The defendant Perdido had actual and constructive knowledge of the disability harassment

because the harassment was open and obvious and because managerial employees participated in the harassment, but the defendant Perdido failed to take prompt action to correct or eliminate the harassment.

74. The defendant Perdido had actual and constructive knowledge of the disability harassment because a number of individuals, including Ennis and Ramirez's wife, complained to managerial employees, but the defendant Perdido failed to take prompt action to correct or eliminate the harassment.

75. The defendant Perdido engaged in the practices complained of herein with malice and/or reckless indifference to the plaintiff's federally protected rights.

76. As a result of the defendant's actions, the plaintiff has suffered pain, financial damage, embarrassment, trauma and humiliation.

77. This claim is brought against the defendant Perdido as the plaintiff's employer under the ADA and not against individual defendants Rivera and Davis.

## COUNT IV: DISCRIMINATION (FAILURE TO ACCOMMODATE) ON THE BASIS OF DISABILITY IN VIOLATION OF THE ADA

78. The plaintiff re-alleges all of the allegations in the Complaint and incorporates the same by reference herein.

79. The plaintiff is a person with a disability, has a history of disability, and/or is regarded as disabled because she has a physical or mental condition that substantially limits a major life activity. *See* 42 U.S.C. § 12102.

80. The defendant is an employer in accordance with 42 U.S.C. §12111(5).

81. The plaintiff is a qualified individual with a disability as defined under the ADA. Furthermore, the defendant perceived the plaintiff as disabled and had a record of the

plaintiff's disability.

82. Despite the plaintiff's disability, with or without reasonable accommodation, she is able to perform the essential functions of his job. Thus, the plaintiff meets the definition of a "qualified individual with a disability". *See* 42 U.S.C. §12111 and 42 U.S.C. §12131(2).

83. The plaintiff sought reasonable accommodations for her disability when she complained that defendant Perdido's proposed resolution of her complaints of sex discrimination and harassment were causing her increased anxiety and made it more difficult to do her job.

84. For instance, Ms. Thomas specifically asked to remain on her same shift and to get additional training. However, Perdido changed Ms. Thomas' shift but left Davis on that same shift and then failed to provide Ms. Thomas with additional training which she would have received otherwise.

85. The plaintiff's requests for reasonable accommodations would not have caused the defendant Perdido any undue burden on its operations. Despite this fact, the defendant refused to make such reasonable accommodations.

86. The defendant has maliciously, intentionally, and with reckless disregard discriminated against the plaintiff due to her disability, her record of disability, and/or her perceived disability; and has otherwise classified and segregated the plaintiff in a way that has adversely affected her job opportunities because of his disability, history of disability, and the perception of her as a person with a disability. *See* 42 U.S.C. §12112; 42 U.S.C. §12132.

87. The defendant's constructive discharge of the plaintiff was also unlawful retaliation in response to the plaintiff's request for reasonable accommodations under the ADA.

88. This claim is brought against the defendant Perdido as the plaintiff's employer under the ADA and not against individual defendants Rivera and Davis.

## COUNT V: RETALIATION (HARASSMENT)
## IN VIOLATION OF TITLE VII

89.     The plaintiff re-alleges all of the allegations in the complaint and incorporates the same by reference herein.

90.     The plaintiff engaged in protected opposition to illegal discrimination when she refused to consent to the hostile work environment created by Rivera, Davis and other employees and managers.

91.     The plaintiff engaged in protected activity to illegal discrimination when she complained about sex discrimination, including sexual harassment.

92.     The defendant Perdido discriminated against the plaintiff on the basis of retaliation with respect to job assignments, discipline, other terms, conditions, and privileges of employment in violation of Title VII.

93.     The actions of the defendant Perdido created a hostile work environment for the plaintiff which was based on retaliation and was continuous in nature during her employment. The hostile work environment was a continuing violation pursuant to Title VII.

94.     The defendant Perdido had actual and constructive knowledge of the sexual harassment because the harassment was open and obvious and because managerial employees participated in the harassment, but the defendant Perdido failed to take prompt action to correct or eliminate the harassment.

95.     The defendant Perdido had actual and constructive knowledge of the retaliatory harassment because managerial employees participated in the harassment, but the defendant Perdido failed to take prompt action to correct or eliminate the harassment.

96.     The defendant Perdido discriminated against the plaintiff by creating and tolerating a

–18–

retaliatory hostile work environment, which included ultimately terminating the plaintiff's employment in violation of Title VII.

97. The defendant Perdido engaged in the practices complained of herein with malice and/or reckless indifference to the plaintiff's federally protected rights.

98. As a result and consequence of the defendant's actions, the plaintiff has suffered pain, financial damage, embarrassment, trauma and humiliation.

99. This claim is brought against the defendant Perdido as the plaintiff's employer under Title VII and not against individual defendants Rivera and Davis.

## COUNT VI: RETALIATION (CONSTRUCTIVE DISCHARGE) IN VIOLATION OF TITLE VII

100. The plaintiff re-alleges all of the allegations in the complaint and incorporates the same by reference herein.

101. The plaintiff engaged in protected opposition to illegal discrimination when she refused to consent to the hostile work environment created by Rivera and Davis.

102. The plaintiff engaged in protected activity to illegal discrimination when she complained about sex discrimination, including sexual harassment.

103. The defendant Perdido discriminated against the plaintiff on the basis of retaliation with respect to job assignments, discipline, other terms, conditions, and privileges of employment in violation of Title VII.

104. The defendant Perdido discriminated against the plaintiff by creating a retaliatory hostile work environment and ultimately terminating the plaintiff's employment in violation of Title VII.

105. The defendant Perdido engaged in the practices complained of herein with malice and/or

reckless indifference to the plaintiff's federally protected rights.

106.    As a result and consequence of the defendant's actions, the plaintiff has suffered pain, financial damage, embarrassment, trauma and humiliation.

107.    This claim is brought against the defendant Perdido as the plaintiff's employer under Title VII and not against individual defendants Rivera and Davis.

## COUNT VII: INVASION OF PRIVACY

108.    The plaintiff re-alleges all of the allegations in the complaint and incorporates the same by reference herein.

109.    The defendants Sami Rivera and Scott Davis invaded the privacy of plaintiff by, among other things, intruding into the plaintiff's private seclusion by making statements or inquiries invasive of her privacy.

110.    The defendant Perdido is liable to the plaintiff for the conduct of defendants Rivera and Davis pursuant to *respondeat superior* and/or because defendant Perdido (a) knew or should have known about their unfitness and continued to employ them; (b) defendant Perdido used the services of Rivera and Davis without proper instruction and with a disregard of the rights or safety of others; and/or (c) defendant Perdido authorized, ratified and/or condoned the actions of its agents, Rivera and Davis, which amounted to an invasion of the plaintiff's privacy.

111.    The defendants Perdido, Rivera, and Davis engaged in the practices complained of herein with malice and/or with reckless indifference to the plaintiff's rights.

112.    This behavior proximately caused the plaintiff to suffer great emotional distress for which she claims compensatory and punitive damages from defendants.

113.    This claim is brought against defendants Perdido, Rivera, and Davis, but not Harrison.

## COUNT VIII: ASSAULT AND BATTERY

114.   The plaintiff re-alleges all of the allegations in the complaint and incorporates the same by reference herein.

115.   The defendants Sami Rivera and Scott Davis physically touched the plaintiff and threatened to touch the plaintiff which constituted acts of assault and battery upon the plaintiff.

116.   The defendant Perdido is liable to the plaintiff for the conduct of defendants Rivera and Davis pursuant to *respondeat superior* and/or because defendant Perdido (a) knew or should have known about their unfitness and continued to employ them; (b) defendant Perdido used the services of Rivera and Davis without proper instruction and with a disregard of the rights or safety of others; and/or (c) defendant Perdido authorized, ratified and/or condoned the actions of its agents, Rivera and Davis, which amounted to assault and battery.

117.   The defendants Perdido, Rivera, and Davis engaged in the practices complained of herein with malice and/or with reckless indifference to the plaintiff's rights.

118.   This behavior proximately caused the plaintiff to suffer great emotional distress for which she claims compensatory and punitive damages from defendants.

119.   This claim is brought against both defendants Perdido, Rivera, and Davis, but not against Harrison.

## COUNT IX: INTENTIONAL INFLICTION OF EMOTIONAL DISTRESS

120.   The plaintiff re-alleges all of the allegations in the complaint and incorporates the same by reference herein.

121.   The defendants Sami Rivera and Scott Davis committed conduct which was extreme, outrageous, and beyond the bounds of decency in civilized society.

122.   The defendant Perdido is liable to the plaintiff for the conduct of defendants Rivera and

Davis pursuant to *respondeat superior* and/or because defendant Perdido (a) knew or should have known about their unfitness and continued to employ them; (b) defendant Perdido used the services of Rivera and Davis without proper instruction and with a disregard of the rights or safety of others; and/or (c) defendant Perdido authorized, ratified and/or condoned the actions of its agents, Rivera and Davis, which amounted to intentional inflication of emotional distress.

123.   The defendants Perdido, Rivera, and Davis engaged in the practices complained of herein with malice and/or with reckless indifference to the plaintiff's rights.

124.   This behavior proximately caused the plaintiff to suffer great emotional distress for which she claims compensatory and punitive damages from defendants.

125.   This claim is brought against both defendants Perdido, Rivera, and Davis.

## COUNT X: NEGLIGENT AND/OR WANTON SUPERVISION, TRAINING, AND/OR RETENTION

126.   The plaintiff re-alleges all of the allegations in the complaint and incorporates the same by reference herein.

127.   This is a claim arising under the law of the State of Alabama to redress the negligent and/or wanton, hiring, supervision, training, and retention of the supervisor who sexually harassed the plaintiff.

128.   The defendant Perdido negligently and/or wantonly failed to adequately supervise, train, and/or retain its agents or employees who sexually harassed the plaintiff which proximately caused the sexual harassment and/or the retaliation against the plaintiff.

129.   This behavior proximately caused the plaintiff to suffer great emotional distress for which she claims compensatory and punitive damages from defendant Perdido.

130.   This claim is brought against defendant Perdido as the plaintiff's employer and not against individual defendants Rivera, and Davis.

## V.   <u>PRAYER FOR RELIEF</u>

WHEREFORE, the plaintiff respectfully prays that this Court assume jurisdiction of this action and after trial:

1.   Grant the plaintiff a declaratory judgment holding that the actions of the defendants described hereinabove violated and continue to violate the rights of the plaintiff as secured by Title VII of the Civil Rights Act of 1964 and the Americans with Disabilities Act.

2.   Grant the plaintiff a permanent injunction enjoining the defendants, their agents, successors, employees, attorneys and those acting in concert with the defendants and on the defendants' behalf from continuing to violate Title VII of the Civil Rights Act of 1964 and/or the Americans with Disabilities Act.

3.   Issue an injunction ordering the defendants not to engage in discrimination and acts which violate Title VII of the Civil Rights Act of 1964 and/or the Americans with Disabilities Act.

4.   Grant the plaintiff an order requiring the defendants to make the plaintiff whole by reinstating her in the position she would have occupied in the absence of the discrimination as set out herein, backpay (plus interest), compensatory, and punitive damages.

5.   The plaintiff further prays for such other relief and benefits as the cause of justice may require, including, but not limited to, an award of costs, attorneys' fees and expenses.

Respectfully submitted,

*/s/ H. Wallace Blizzard*
H. Wallace Blizzard
WIGGINS, CHILDS, PANTAZIS,
FISHER & GOLDFARB, L.L.C.
The Kress Building

301 19th Street North
Birmingham, Alabama 35203
Telephone/Fax: (205) 314-0500

*Counsel for Plaintiff*

## PLAINTIFF DEMANDS A TRIAL BY STRUCK JURY ON ALL ISSUES TRIABLE BY A JURY.

*/s/ H. Wallace Blizzard*
OF COUNSEL

**The plaintiff requests this Honorable Court to serve via certified mail upon the defendant the following: Summons, Complaint.**

**Defendants' Addresses:**

GULF BEACH HOTEL, INC.
c/o NANCY B MEADLOCK
27200 PERDIDO BEACH BLVD
ORANGE BEACH, AL 36561

SCOTT JEFFREY DAVIS
117 BROADMOOR DR
DAPHNE, AL 36526-7725

SAMUEL DAVID RIVERA
17892 COUNTY RD 26
FOLEY, AL 36535-4103

`                    */s/ H. Wallace Blizzard*
                    OF COUNSEL